Filed 11/16/20  P. v. Urquilla CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B298404 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA100645) |
| v. | |
| DOUGLAS URQUILLA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed in part; reversed in part and remanded.

Robert E. Boyce, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Douglas Urquilla filed a petition for resentencing under Penal Code section 1170.95, with respect to his conviction for two counts of first degree murder (Pen. Code, § 187).[1]  The trial court summarily denied the petition on the basis that defendant was ineligible for relief as a matter of law.  On defendant's appeal, the Attorney General concedes that defendant is not ineligible with respect to one count, but argues that he is ineligible with respect to the other.  We agree with the Attorney General and affirm in part and reverse in part.

### FACTUAL AND PROCEDURAL BACKGROUND

1. ***The Crimes and Conviction*[2]**

In 1994, defendant and his fellow gang member Rudolfo Corrales shot and killed Martin Jasso and Erika Briseno.  It was believed that Jasso was killed due to his "perceived cooperation with the police on two murders committed three days earlier by Corrales."  Briseno was walking with Jasso when defendant and Corrales attacked Jasso; the inference is that Briseno was killed because she was a witness to the Jasso murder.

Defendant and Corrales were in a car driven by a third man when they approached an alley.  Corrales told the driver to stop, and got out of the car.  As the driver proceeded down the alley, he and defendant spotted Jasso and Briseno walking together.  The car pulled up beside the victims.  Defendant "pointed a gun out the window at Jasso and fired two shots."

---

[1]    All undesignated statutory references are to the Penal Code.

[2]    Our discussion of the facts is taken from the opinion in defendant's prior appeal (*People v. Urquilla* (April 16, 1999, B119484 [nonpub. opn.]) which the trial court attached as an exhibit to its ruling denying defendant's section 1170.95 petition.

Jasso and Briseno fled in different directions. Defendant ran after Jasso; Briseno had run back toward where Corrales had exited the car. Corrales shot and killed Briseno. Corrales then joined defendant and the two approached Jasso, who was lying on the ground. Two shots rang out, killing Jasso, although it is not clear which of the two men fired the shots.

In 1997, defendant was convicted of two counts of first degree murder, with a principal armed enhancement (§ 12022, subd. (a)(1)). The jury also found the multiple-murder special circumstance true. Defendant was sentenced to two consecutive terms of life in prison without the possibility of parole (LWOP), plus one year.

In 1999, defendant's conviction was affirmed on appeal. The appellate opinion indicates that, as to the Jasso murder (count one), the prosecution had proceeded on the theory that defendant was either the actual killer or that he had aided and abetted Corrales in killing him.[3] As to the Briseno murder (count two), the prosecution had argued either that defendant had directly aided and abetted Corrales in killing her, or that the

---

[3] There is a statement in the opinion that Jasso "was killed by appellant." But, later in the opinion, it is explained that the prosecution proceeded on alternative theories of actual killer and direct aider and abettor of Corrales. As to this second theory, the prosecutor specifically argued that defendant "wounded Jasso but refrained from killing him so that Corrales could fire the final shot."

Briseno murder was the natural and probable consequence of the murder of Jasso.[4]

## 2. *Proceedings on Defendant's Section 1170.95 Petition*

On March 25, 2019, defendant, representing himself, filed a form petition for resentencing under section 1170.95. He checked all the relevant boxes entitling him to relief, and requested appointment of counsel.

On April 9, 2019, the trial court summarily denied the petition, without the appointment of counsel or a hearing. The court's order explained that the court had reviewed the file, including the appellate opinion and verdict forms. Based on that information, "and the court's recollection of the trial evidence," the court denied the petition. The court concluded the following three points were "clear beyond a reasonable doubt": (1) the evidence established defendant was the actual killer of Jasso; (2) although the jury had been instructed on natural and probable consequences with respect to the murder of Briseno, there was sufficient evidence of direct aiding and abetting as well, so defendant could still be convicted of the Briseno murder under current law; and (3) the multiple-murder special circumstance establishes that the jury found defendant acted with the intent to kill.

---

[4] In his reply brief, defendant states that natural and probable consequences was the only theory pursued with respect to the Briseno murder. The appellate opinion states otherwise, and, in response to defendant's insufficiency of the evidence argument, found sufficient evidence of both natural and probable consequences and direct aider and abettor. The prior panel of this court specifically held there was sufficient evidence that defendant "did intend to kill, or assist Corrales in killing Briseno at the same time as Jasso."

4

Defendant filed a timely notice of appeal.

### *DISCUSSION*

**1.** **Governing Law**

In 2018, the Legislature adopted Senate Bill No. 1437 (SB 1437) which, among other things, eliminated the natural and probable consequences doctrine as it relates to murder.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*), review granted Mar. 18, 2020, S260493.)  Specifically, SB 1437 amended section 188 to provide that, except as it relates to felony murder, which is not at issue in this case, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought."  SB 1437 also enacted a new statutory procedure, codified in section 1170.95, by which a defendant convicted of murder under the natural and probable consequences doctrine could seek resentencing under the new, narrower, version of the law.

Once a section 1170.95 petition is filed, there follows a multi-step process by which the court first determines whether the petition is facially complete, and, if so, whether the petitioner has made a prima facie showing that he falls within the provisions of statutory eligibility.  (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1177 (*Torres*), review granted June 24, 2020, S262011.)  The materials which the court can review at this stage include the prior appellate opinion.  (*People v. Lee* (2020) 49 Cal.App.5th 254, 263, review granted July 15, 2020, S262459; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, fn. 7, review granted Mar. 18, 2020, S260598.)  If the court determines the petitioner is ineligible for relief as a matter of law, the petition is denied at this first stage; if not, the court proceeds to the next step.  (*Torres*, *supra*, 46 Cal.App.5th at pp. 1177–1178.)  At the

5

second stage, the court must appoint counsel for the defendant, if requested, and permit briefing on the issue of the defendant's entitlement to relief under the statute. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330.)

**2.** ***The Petition Was Properly Denied With Respect to the Jasso Murder But Not the Briseno Murder***

At the first stage, the court's inquiry is only whether the defendant is ineligible for relief under section 1170.95 as a matter of law. (*Verdugo, supra*, 44 Cal.App.5th at p. 329.) If, for example, the court's review of the record of conviction necessarily establishes the defendant was convicted on a ground that remains valid after SB 1437's amendment of murder law, the petition may be denied at this stage. (*Id.* at pp. 329–330.) But if the court "cannot rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting" the defendant of murder, there is no prima facie ineligibility. (*People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

Prima facie ineligibility is a legal conclusion we review de novo. (*People v. Verdugo, supra*, 44 Cal.App.5th at p. 328, fn. 8.)

**A.** ***The Jasso Murder – Count One***

Defendant is ineligible for relief as a matter of law with respect to the Jasso murder. Defendant was not convicted of that murder under a natural and probable consequences theory. The appellate opinion confirms that defendant was convicted of the Jasso murder either as the actual killer or as a direct aider and abettor of the actual killer, Corrales. Regardless of which of these theories the jury accepted, defendant is ineligible for relief

6

under the statute with respect to Jasso's murder.[5] (See *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 review granted Mar 18, 2020, S260410 [a defendant convicted as the actual killer is ineligible for section 1170.95 relief]; *People v. Lewis, supra,* 43 Cal.App.5th at pp. 1135, 1138–1139 [a defendant convicted for directly aiding and abetting the actual killer is also ineligible for section 1170.95 relief].)

### B. *The Briseno Murder – Count Two*

We reach a different conclusion with respect to the Briseno murder. As the Attorney General concedes, the jury found defendant guilty of this murder either as a direct aider and abettor or under the now-abrogated natural and probable consequences doctrine. Because defendant may have been convicted under natural and probable consequences, he is not ineligible as a matter of law.

The trial court concluded to the contrary, reasoning that since sufficient evidence supported the still-proper theory of direct aider and abettor liability, defendant's conviction survived SB 1437's invalidation of the natural and probable consequences doctrine. But the conclusion is not appropriate at the prima facie stage. The inquiry at this stage is only whether the statute

---

[5] Defendant does not challenge this conclusion on any facts specific to this case, but simply suggests that, as a general matter, "the question of whether a petitioner is ineligible for relief 'as a matter of law[]' [citation] may sometimes be disputable. Only the appointment of counsel, who will review the petitioner's case as a zealous advocate on their behalf, can identify those cases." Defendant was appointed counsel on appeal, who nonetheless was unable to identify any reason defendant may be eligible for section 1170.95 relief with respect to the Jasso murder.

7

cannot apply as a matter of law. Because defendant may have been convicted of this count on a natural and probable consequences theory, the statute may apply. That is all that is required at this point. Whether the defendant's conviction of murdering Briseno might nonetheless survive due to evidence that was presented to the jury on an alternative theory is an inquiry for a later stage of the process. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 [if the matter proceeds to an order to show cause, the burden is on the prosecution to establish beyond a reasonable doubt that defendant is ineligible for resentencing].)

3. ***The Multiple-Murder Special Circumstance Does Not Change the Result***

The trial court relied on the multiple-murder special circumstance as establishing the jury found defendant acted with the intent to kill. The special circumstance does require intent to kill when the defendant was not the actual killer. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 494.) However, that requirement applies only to one murder, not all of them. "To find true the multiple-murder special-circumstance allegation, a jury must find that the defendant has been convicted of at least two counts of murder, at least of one which must be first degree murder, and that the defendant either actually killed or intended to kill at least one of the victims. [Citations.]"[6] (*Id.* at

_____

[6] Defendant's jury was instructed accordingly in the language of CALJIC No. 8.80.1: "If you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true. [¶] If you find that a defendant was not the actual killer of a human being, or if

8

p. 495.) That the jury found this special circumstance true does not mean the jury found defendant acted with the intent to kill Briseno; it may mean only that defendant actually killed, or acted with the intent to kill, Jasso.

4. ***Defendant's Remaining Arguments are Not Cognizable***

Prior to SB 1437, our Supreme Court held in *People v. Chiu* (2014) 59 Cal.4th 155 that natural and probable consequences aider and abettor liability could support second degree murder, but not first degree murder. Defendant argues on appeal that his conviction of the Briseno murder must be reversed under *Chiu*.

Regardless of whether *Chiu* has any remaining effect following SB 1437, it is simply not at issue in this appeal. This is not a direct appeal of defendant's conviction or a habeas petition raising *Chiu* (see *In re Martinez* (2017) 3 Cal.5th 1216), but an appeal of the summary denial of a post-judgment petition for resentencing under section 1170.95. We conclude that defendant's petition should not have been summarily denied with respect to the Briseno murder; that is the sole relief to which he is entitled in this appeal.[7]

---

you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided and abetted any actor in the commission of the murder in the first degree."

[7] For the same reason, defendant's contention that his multiple-murder special circumstance should be stricken as only the Jasso conviction survives must also be rejected as premature. Defendant also argues that he was improperly charged with two

### *DISPOSITION*

The denial of defendant's section 1170.95 petition is affirmed as to count one (the Jasso murder) and reversed as to count two (the Briseno murder).  As to count two, the matter is remanded for the appointment of counsel, the receipt of briefs, and a hearing in accordance with section 1170.95, subdivision (c).


                                                          RUBIN, P. J.

WE CONCUR:



BAKER, J.



MOOR, J.

---

multiple-murder special circumstances and that, as he could only be charged with one, one of his LWOP terms must be vacated as an illegal sentence.  While this issue is not cognizable on appeal from the denial of defendant's section 1170.95 petition, defendant's argument is erroneous both as a matter of fact and as a matter of law.  Factually, only a single multiple-murder special circumstance was charged and found true.  Legally, "the trial court is not precluded from imposing either concurrent or consecutive LWOP sentences for each of the first degree murder convictions based on the single multiple-murder special circumstance."  (*People v. Garnica* (1994) 29 Cal.App.4th 1558, 1564.)